ERVIN, Judge,
dissenting.
I respectfully dissent. Initially, it is unclear whether the trial judge’s order, which simply denied the motion to suppress, was based on the ground that the defendant lacked standing to contest the search or that the lawful tenant of the premises had given the police officer consent to search. If the denial was due to the latter, I think there is merit in appellant’s contention that the state conceded below that there was no lawful consent, and that therefore the only issue before the trial court was that of the defendant’s standing. In its response to the motion to suppress, the state made the following representation: “The state does not claim a lawful search as the response to this defendant’s motion. It is readily conceded that the search was supported neither by a warrant nor by probable cause. If the evidence in this case were offered against Beverly Smith, suppression would be in order.”
In view of the state’s concession,[1] I conclude that the trial court must have denied the motion to suppress on the theory that the defendant lacked standing to contest the search. If, however, there is any uncertainty in this regard, it appears to me that the proper way to dispose of the question is to remand the case to the trial court to permit it to clarify whether the motion to suppress was denied either because of the defendant’s lack of standing or on the basis of consent, or both.
If, as I believe, the trial court determined that the defendant did not have standing on the theory that he was not a guest who necessarily had a valid expectation of privacy in the area searched, I consider that there is no record foundation to support such a conclusion. At the hearing on the motion to suppress, the arresting officer testified that following a call regarding a disturbance located in an apartment later identified as Beverly Smith’s residence, he arrived at the scene and upon reaching the top of the stairs leading to the apartment, he could hear loud sounds coming from a television set within. Thereafter his knock at the door was answered by the voice of a person whom he believed to be a man asking who was present. Upon his response that he was a police officer, he noticed that the volume of the television set was turned down, and he heard what appeared to be objects being moved about inside the apartment. He again knocked and announced his presence two more times before a woman identified as Beverly Smith opened the door, and he stated he wished to speak both to her and the other person present. When Smith went back inside the apartment for several minutes, the officer was able to hear the sounds of objects in water, which he believed from his experience to be an attempt by someone to dispose of contraband by flushing it down a toilet.
What transpired thereafter is conflicting. Smith testified that the officer was inside the apartment door without her consent when she returned from the bathroom, whereas the officer testified that Smith had permitted him entry into the apartment. Following his entry, with Smith’s assent or otherwise, the officer observed the defendant Davis standing over a toilet located in the rear bathroom off the master bedroom *63 holding what appeared to be baggies of crack cocaine in his hand, and he saw also nearby a grocery bag with more crack cocaine inside it.
The question of Davis’s standing to contest the search of the area where the articles at issue were found depends upon whether, as a guest in Smith’s apartment, he had a legitimate expectation of privacy therein that society is prepared to recognize as reasonable. See Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978), as later refined in Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In Olson the court held that one’s status as an overnight guest was alone sufficient to satisfy the test. The testimony below of Beverly Smith, the lawful tenant of the premises searched, shows, in my judgment, that appellant satisfied that test.
Beverly Smith testified that she had previously given the key to her apartment to her then-boyfriend because he wanted to change his clothes. When she returned to the apartment, she found appellant sitting on the sofa watching television. The boyfriend at that time was no longer on the premises. Appellant had only been inside the apartment for a short period of time before Smith returned. Once she learned who Davis was, she said he was welcome to stay, and she also testified that the police did not arrive until approximately fifteen minutes later.
I consider that one’s using a home for the apparent purpose of changing clothes (Davis’s pants and shirt were found in the front room), and remaining inside the home with the consent of the owner justifies the occupant’s reasonable expectation of privacy. Thus I think it clear, in the words of Olson, that appellant had a legitimate expectation that “he and his possessions ... [would] not be disturbed by anyone but his host and those his host allows inside.” Id. at-, 110 S.Ct. at 1689, 109 L.Ed.2d at 94.
Although the record fully supports a determination that Davis’s status was that of a shorter-term guest than that of an overnight guest, Smith’s testimony is also supportive of a finding that Davis was indeed invited as an overnight guest:
Q. Once you found out who he was, was he invited to stay?
A. (Witness nods head affirmatively.)
Nevertheless, even if Davis could not be said to have been invited to stay the night, I do not consider that Olson necessarily denies standing to one whose status in a residence is less than that of an overnight guest. As one highly respected commentator in the field of search and seizure observes:
It is equally clear that the Olson holding does not (and did not have to) cover a shorter-term guest; the phrase “overnight guest” is used repeatedly in the Court’s analysis, and the defendant had that status. Yet, it is fair to say that the Olson decision lends considerable support to the claim that shorter-term guests also have standing. For one thing, by rejecting the contention that a visitor must have “complete dominion and control” the Olson Court undercut the basis on which many lower courts found shorter-term guests to lack standing. For another, despite the Court’s emphasis upon the special privacy concerns of guests when they “are asleep” and “cannot monitor [their] own safety or the security of [their] belongings,” that consideration seems largely irrelevant in the Olson case itself, where the objected-to police conduct occurred at three o’clock in the afternoon. That is, Olson’s 3 p.m. legitimate expectation — in the words of the Court, that “he and his possessions will not be disturbed by anyone but his host and those his host allows inside” — would exist whether he arrived the night before, only that morning, or, indeed, only shortly before the police entry. Moreover, visiting the house of another without an overnight stay is (again in the words of Olson) likewise “a longstanding social custom that serves functions recognized as valuable by society” and an event during which “hosts will more likely than not respect the privacy interests of their guests.”
*64 4 W. LaFave, Search & Seizure § 11.3, at 38 (Supp.1990) (footnote omitted).
To conclude, I consider that the trial court erred in determining that the defendant lacked standing to suppress the search. If, however, any doubt remains regarding whether the trial court’s denial of the motion to suppress was based on either the defendant’s lack of standing or consent to search, I would simply remand the case to the trial judge with directions for him to clarify his findings in that regard.

. The state now takes a different position at the appellate level.